591 A.2d 1345

## PARAMUS SUBSTANTIVE CERTIFICATION NO. 47 ("FANWOOD BILL").

Superior Court of New Jersey
Appellate Division

Argued April 24, 1991—Decided May 24, 1991.

2

Before Judges KING, R.S. COHEN and STERN.

*Robert S. Raymar* argued the cause for appellants Alexander's Department Stores of New Jersey, Inc. and Sakraf Wine and Liquor Store, Inc. (*Hellring Lindeman Goldstein Siegal Stern & Greenberg,* attorneys; *Jonathan L. Goldstein, Robert S. Raymar* and *Heidi H. Hellring,* of counsel); *Robert S. Raymar* on the brief and reply brief).

*Donald M. Palombi,* Deputy Attorney General, argued the cause for respondent New Jersey Council on Affordable Housing (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel; *Donald M. Palombi* on the brief).

*Gary T. Hall* argued the cause for respondents Borough of Paramus, Mayor and Borough Council of Paramus (*McCarter & English,* attorneys; *Alfred L. Ferguson,* of counsel; *Gary T. Hall* and *Lisa S. Bonsall* on the brief).

*Theodore L. Abeles* argued the cause for respondents Westland Properties, Inc., and Westland Garden State Plaza (*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* attorneys; *Theodore L. Abeles* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

This appeal requires us to interpret the so-called "Fanwood Bill," *L.* 1989, *c.* 142; *N.J.S.A.* 52:27D–311.1 and 313.1, effective August 3, 1989. That act amends the Fair Housing Act, *N.J.S.A.* 52:27D–301 to –329, by prohibiting the Council on Affordable Housing (COAH) from requiring municipalities seeking substantive certification to consider as available for affordable housing sites already improved with sound residential structures. The act was adopted shortly after COAH ordered the Borough of Fanwood to consider as available small parcels of land owned by developers which were improved with existing sound residential dwellings but which the developers intended to demolish in order to erect high-density multi-family

housing, some of which would be affordable by low and moderate income people.

In the case before us Paramus, formerly a defendant in an exclusionary zoning suit, sought substantive certification of a plan which called for the demolition of between six and 11 residential structures to make room for a 274–unit low and moderate income housing project. Paramus entered into an agreement with Westland, the owner of the property and also of an adjacent shopping center, to amend the zoning ordinance to permit more intensive commercial development of the shopping center in exchange for land and money from Westland. COAH approved the plan about a year before the "Fanwood Bill" took effect. Appellant Alexander's Department Stores (Alexander's), which owns commercial property adjacent to Westland's, and is apparently a competitor, asked COAH to vacate the grant of substantive certification on the ground that the "Fanwood Bill" prohibited the removal of the residential structures on the Westland property.

COAH had granted Paramus' petition for substantive certification on September 6, 1988. The "Fanwood Bill" had become effective on August 3, 1989. Appellant Alexander's had filed its motion with COAH on September 5, 1989 requesting that COAH vacate substantive certification.[1] COAH denied appellant's motion in a written opinion dated December 11, 1989.

COAH ruled that the "Fanwood Bill" did not apply because Paramus itself had selected the Westland site voluntarily as particularly suitable for low and moderate income housing. Unlike the situation in Fanwood, COAH had never ordered Paramus to consider the Westland site as available for construction of low and moderate income housing. We agree with COAH and affirm.

---

[1]None of the respondents contest Alexander's standing to make this challenge under *L.*1989, *c.* 142. See generally *Alexander's v. Paramus Bor.,* 243 *N.J.Super.* 157, 578 *A.*2d 1241 (App.Div.1990), certif. granted —— *N.J.* —— (1991).

## I

This is the factual background. In 1976 a builder brought an exclusionary zoning suit against Paramus which prevailed in the Law Division. However, we remanded for reconsideration in light of *Mt. Laurel II (Southern Burlington Co. N.A.A.C.P. v. Mount Laurel Tp.*, 92 *N.J.* 158, 456 *A.*2d 390 (1983)). In 1985 a Law Division judge decided that the Borough's ordinance was exclusionary and appointed a master to assist in devising a suitable remedy. Finding sites for low and moderate income housing proved to be a difficult task because Paramus was almost totally, and rather intensively, developed. Of the 595 acres involved the master identified as capable of *Mt. Laurel*-type development, 44 to 46 belonged to respondent Westland, and were located immediately adjacent to the Garden State Plaza Shopping Center, also owned by Westland. At this point, Westland claimed that it had no intention of developing this land for housing and that most of its property was inappropriate for residential use.

The Superior Court exclusionary zoning litigation then was transferred to COAH on September 2, 1986. In February 1987 Paramus submitted its initial housing element and fair-share plan. The fair-share plan sought to avoid inclusionary developments, under which a developer would erect four market-rate units to subsidize one *Mt. Laurel* unit, because the municipality was intensively developed with single-family homes on small lots and had an unusual concentration of commercial, office and industrial uses, all of which caused severe traffic congestion. Instead, Paramus opted to satisfy its fair share as much as possible through developer subsidies in exchange for zoning concessions, which would generate the funds to erect projects of exclusively low and moderate income housing.

A key component of Paramus' plan was the construction of a 274–unit low and moderate income housing project on about 13 acres of land adjacent to the Garden State Plaza, sometimes referred to as the Arcola Avenue site. Westland owns between

eight and 11 of these 13 acres. Apparently, the remaining land had been dedicated to the Borough for the development of streets. The Westland property contains six single-family dwellings on lots of less than one acre. Only three of the six are occupied. There was some question before COAH as to how many of these dwellings actually were habitable. The six structures must be demolished in order to build the envisioned 274–unit *Mt. Laurel* project.

On August 18, 1987 Paramus and Westland entered into an agreement under which Westland agreed to transfer its eight to 11 acres to the Borough and contribute $2,500,000 to the Borough's affordable housing fund in exchange for rezoning concessions which would allow Westland the opportunity to construct additional commercial facilities on its remaining property. The plan was reviewed by a mediator and approved by COAH in its September 6, 1988 resolution granting Paramus substantive certification. COAH imposed a timetable for a development of the Arcola Avenue site.

At no time did Alexander's participate in the administrative proceedings before COAH. On October 18, 1988 Paramus adopted an ordinance to provide its fair share of low and moderate income housing and to implement the terms of its substantive certification. Alexander's then challenged the ordinance on a variety of grounds in an action in lieu of prerogative writs in the Law Division. See our opinion at 243 *N.J.Super.* 157, 578 *A.*2d 1241 (App.Div.1990), *certif. granted* — *N.J.* — (1991).

## II

Alexander's contends that COAH erroneously interpreted Section 1 of the "Fanwood Bill" as applied to Paramus. Alexander's maintains that Section 1 and the relevant legislative history reveals an intent on the part of the Legislature to prohibit the demolition of sound residential housing to make way for affordable housing. Respondents all maintain that

Section 1 of the Fanwood Bill does not apply because COAH never *required* Paramus to consider a site that already had habitable residential dwellings. Rather, Paramus selected the Arcola Avenue site from among several possibilities. Respondents maintain that the "Fanwood Bill" was intended to give municipalities the option of considering already improved sites for affordable housing. They contend that choice could not be forced upon a municipality by COAH.

The statute in issue, *L.*1989, *c.* 142, says in its entirety:

1. Nothing in the act [the Fair Housing Act] to which this act is supplementary, *P.L.*1985, *c.* 222 (*C.* 52:27D–301 et al.), shall be construed to require that a municipality fulfill all or any portion of its fair share housing obligation through permitting the development or redevelopment of property within the municipality on which is located a residential structure which has not been declared unfit, or which was within the previous three years negligently or willfully rendered unfit, for human occupancy or use pursuant to *P.L.*1942, *c.* 112 (*C.* 40:48–2.1 *et seq.*), and which is situated on a lot of less than two acres of land or on a lot formed by merging two or more such lots, if the development or redevelopment would require the demolition of that structure. Any action heretofore taken by the Council on Affordable Housing based upon such a construction of *P.L.*1985, *c.* 222 is invalidated. [*N.J.S.A.* 52:27D–311.1.]

2. The Council on Affordable Housing shall not consider for substantive certification any application of a housing element submitted which involves the demolition of a residential structure, which has not been declared unfit, or which was within the previous three years negligently or willfully rendered unfit, for human occupancy or use pursuant to *P.L.*1942, *c.* 112 (*C.* 40:48–2.3 *et seq.*), and which is situated on a lot of less than two acres of land or on a lot formed by merging two or more such lots, unless an application for development has been previously approved by the municipal planning board or municipal zoning board pursuant to procedures prescribed by the "Municipal Land Use Law." *P.L.*1975, *c.* 291 (*C.* 40:55D–1 *et seq.*). [*N.J.S.A.* 52:27D–313.1]

As noted, the statute became effective August 3, 1989.

COAH determined that Section 1 was inapplicable because COAH had never *required* Paramus to consider the Arcola Avenue site. COAH reasoned:

The paragraph is retroactive in application, and strikes down any prior COAH action that required a municipality to utilize the type of property designated. Thus, any previous COAH decision mandating that a municipality include such property in its housing plan would be invalid under the first paragraph of *L.*1989, *c.* 142. However, the present case does not fall within the purview of *L.*1989, *c.* 142, paragraph one, because Paramus *voluntarily* elected to utilize the site in question. COAH took no action whatsoever mandating that Para-

mus include the site in its plan, and there is thus no action that could be struck down pursuant to *L.*1989, *c.* 142, paragraph one. [emphasis in original]

In interpreting the statute, our goal is to ascertain the intent of the Legislature as revealed by the language of the statute, the legislative scheme of which it is a part, the underlying policy and the legislative history. *Kimmelman v. Henkels & McCoy, Inc.* 108 *N.J.* 123, 128–129, 527 *A.*2d 1368 (1987); *Miller v. Mitchell,* 245 *N.J.Super.* 290, 300, 585 *A.*2d 414 (App.Div.1991). We are not bound by an administrative agency's interpretation of a statute, *Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973), although an agency's interpretation of a statute is entitled to substantial weight. *Matter of Bd. of Educ. of Town of Boonton,* 99 *N.J.* 523, 534, 494 *A.*2d 279 (1985), *cert. denied,* 475 *U.S.* 1072, 106 *S.Ct.* 1388, 89 *L.Ed.*2d 613 (1986).

We conclude that the key term in Section 1 is "required." If COAH had required Paramus to consider the development of affordable housing on property improved with habitable residences, then its grant of substantive certification is invalid. We agree with COAH that it imposed no such requirement in this case.

The legislative history makes clear that Section 1 was intended to reach situations where COAH had compelled the municipality to consider certain developed sites against the wishes of that municipality. The legislative sponsor's statement referred to a specific case where COAH had "ruled that where a developed municipality does not have useable vacant sites for use in meeting its fair-share housing obligation, but where a developer expresses willingness to create suitable sites by demolishing residential structures, the council must consider these sites as available for fair housing purposes."

As everyone involved in this appeal acknowledges, the sponsor was referring to the Fanwood situation. Fanwood was a defendant in an exclusionary zoning suit whose case had been transferred to COAH following adoption of the Fair Housing

Act. COAH had assigned Fanwood a fair share of 87 units. Fanwood said it had no vacant land, and claimed its "fair share obligation should be adjusted to zero." However, some developers who owned small improved parcels with habitable dwellings volunteered to demolish the structures if they were allowed to build high-density projects containing affordable housing units. COAH agreed with the developers, ruling that, if otherwise suitable, the "borough must use the sites in order to obtain a certification."

According to the statement of the sponsor of the "Fanwood Bill", the Fair Housing Act never intended "to achieve affordable housing objectives through the destruction of perfectly decent residential accommodation." The sponsor noted that in some, nearly fully-developed municipalities "developers are acquiring decent housing on small lots and attempting to redevelop those lots at higher densities, using the *Mt. Laurel* process as a justification to maneuver municipalities into granting demolition permits." Statements of the relevant Senate and Assembly committees likewise declared that it was never the intent of the Fair Housing Act to require municipalities to demolish existing structures in order to build affordable housing. Courts may refer to legislative history and contemporaneous construction "for aid in ascertaining the true intent of the legislature." *New Jersey Pharmaceutical Ass'n v. Furman,* 33 *N.J.* 121, 130, 162 *A.*2d 839 (1960).

The express language of the Act and the legislative history leads us to conclude that any claim that COAH "required" Paramus to select the Westland site is without merit. The situation in Paramus is nowhere comparable to Fanwood. Paramus did not ask COAH for a reduction in its fair share because of a lack of vacant land. Though scarce, developable land does exist in Paramus; the Borough's planner said that about 261 acres on 29 scattered sites is both vacant and developable. Paramus had choices that Fanwood did not. Paramus selected the Arcola Avenue site from among several alternatives.

■ We also reject Alexander's contention that Paramus' decision was not voluntary because the Borough had been involved in exclusionary zoning litigation since 1976 and because COAH's substantive certification specifically required development of the Arcola Avenue site. Alexander's logic suggests that any municipality which has been a defendant in an exclusionary zoning suit and whose case was transferred to COAH could not build affordable housing on land already occupied by habitable structures, even if it desired, because the municipality's presence before COAH was compelled by .its initial involvement in exclusionary zoning litigation. We completely reject this casuistic concept of compulsion.

This contention by Alexander's is also most inconsistent with Section 2 of the statute. The bill as originally introduced stated that COAH can consider plans which use already-developed land if the governing body had previously approved the concept. *Sen. Bill* No. 3342, introduced on February 23, 1989 by Senators Lynch and De Francesco. The bill as finally enacted into law states that such municipal approval must come from either the planning or zoning board. The spirit and purpose was obviously to give the municipalities a choice about using already-developed property, not a mandate. And, most convincingly, Paramus evinces no desire to back out of this plan at this point.

■ Finally, we reject Alexander's argument that COAH failed to apply Section 2 of the act, *N.J.S.A.* 52:27D–313.1, to Paramus. This section, as noted, allows COAH to grant substantive certification if the municipal planning board or zoning board approves an application to demolish existing housing in order to build affordable housing. COAH quite properly held that Section 2 applied prospectively only. Normally, legislation operates prospectively. *Gibbons v. Gibbons,* 86 *N.J.* 515, 521–522, 432 *A.*2d 80 (1981). As COAH sensibly observed, municipalities receiving substantive certification before the effective

date of the "Fanwood Bill" could not be expected to comply with procedural requirements which did not previously exist.

Affirmed.