694 A.2d 289

IN THE MATTER OF ELIGIBILITY OF CERTAIN ASSISTANT
UNION COUNTY PROSECUTORS TO TRANSFER TO
PFRS UNDER *N.J.S.A.* 43:16A–1 ET SEQ.

Superior Court of New Jersey
Appellate Division

Argued May 7, 1997—Decided May 27, 1997.

552

Before Judges BAIME, PAUL G. LEVY, and BRAITHWAITE.

*William Palleria* argued the cause for appellant County Prosecutors' Association of New Jersey (*John Musarra*, Warren County Prosecutor's Office, attorney and on the joint brief).

*James Hirschhorn* argued the cause for appellants Robert O'Leary, Patricia Cronin, Deborah G. Cummis, William T. Donegan, Ann K. Frawley, James A. Hart, III, Laura A. Hook, Monique V. Imbert, Daria Smith Isenhour, Thomas K. Isenhour, Stanley J. Kaczorowski, Harold C. Knox, William Kolano, S. Sue Lewis, Susan M. MacMullan, Peter A. McCord, Tangerla D. Mitchell, Maureen O'Brien, Mark J. Panko, Ann R. Rubin, Kenneth N. Siegel, Kathleen H. Walsh, Debra A. White, Albert Zabady, Jr., Michael J. Zidonik (*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross*, attorneys; *Mr. Hirschhorn*, of counsel and on the joint brief).

*Richard P. Rodbart* argued the cause for appellants Richard P. Rodbart, Henry W. Jaeger and David J. Hancock (*Mr. Rodbart*, Union County Prosecutor's Office, attorney and on the joint brief).

*Robert H. Stoloff*, Assistant Attorney General, argued the cause for respondent Board of Trustees of the Police and Firemen's Retirement System (*Peter Verniero*, Attorney General, attorney; *Joseph P. Yannotti*, Assistant Attorney General, of counsel; *Mr. Stoloff* and *Susanne Culliton*, Deputy Attorney General, on the brief).

*Lawrence M. Miller*, Assistant Union County Counsel, argued the cause for respondent County of Union (*James Keefe*, Union County Counsel, attorney; *Mr. Miller*, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This appeal presents difficult questions having significant financial ramifications on New Jersey public employee pension systems. At issue is whether assistant county prosecutors qualify as "policemen" and are eligible for membership in the Police and Firemen's Retirement System (PFRS). The statutory definition of policeman includes "an administrative or supervisory employee of a law enforcement unit ... whose duties include general or direct supervision of [persons] engaged in investigation, apprehension, or detention activities or training responsibility" and who also engages in police work when needed. *N.J.S.A.* 43:16A–1(2)(a). Following a protracted evidentiary hearing, the Board of Trustees of the PFRS concluded that the Legislature did not intend to extend membership to law enforcement positions not engaged in traditional police activities. We agree and affirm the Board's decision essentially for the reasons expressed in its written determination.

I.

In December 1989, then Union County Prosecutor John Stamler petitioned the Division of Pensions and Benefits to authorize the transfer of all Union County Assistant Prosecutors from the Public Employees' Retirement System (PERS) into the PFRS. The petition was prompted by the more generous retirement benefits granted by the PFRS. Under applicable statutes and

regulations, a member of PERS who retires at age fifty is entitled to benefits consisting of 36% of his final salary. *N.J.S.A.* 43:15A–41(b), –48. In contrast, a member of PFRS who retires with twenty-five years of service at any age receives benefits totalling 65% of his final salary. *N.J.S.A.* 43:16A–11.1.

The petition remained dormant until June 1992, when Stamler's successor, Andrew Ruotolo, renewed the request for a transfer. After the Board denied the application, the assistant prosecutors remaining in the case, David J. Hancock, Richard P. Rodbart, and Henry W. Jaeger, requested a hearing. The matter was transferred to the Office of Administrative Law as a contested case. The facts were stipulated by the parties. The administrative law judge rendered an initial decision in which he recommended denying the assistant prosecutors' application. The Board adopted the ALJ's decision. The assistant prosecutors appealed.

In an unpublished opinion, we remanded the matter to the Board for a full evidentiary hearing. We noted that the amendatory legislation enacted in 1989 deleted a list of employment titles which were approved for membership in the PFRS and replaced it with generic criteria for eligibility. *N.J.S.A.* 43:16A–1(2)(a). We concluded that the Legislature intended the determination of eligibility for membership in PFRS to hinge upon a functional analysis of work duties and requirements rather than reference to a list of descriptive job titles. We added that Hancock, Rodbart, and Jaeger were at the top of the hierarchial administrative structure of the Union County Prosecutor's Office and thus were vested with supervisory responsibilities causing them to have strong links with county and municipal agencies. We stressed that the abbreviated record told us very little about the role of assistant prosecutors in the criminal justice system. We envisioned that the remand hearing would serve to further develop the record pertaining to the precise manner in which assistant prosecutors conduct their duties, the nature and extent of their interaction with municipal, county, and state police officials, and the

impact of their applications on other governmental offices and positions.

Candor requires us to observe that the extensive administrative proceedings that followed our remand order only partially fulfilled our expectations. The significant financial ramifications of including assistant prosecutors in the membership of PFRS were certainly clarified. Twenty-seven additional assistant prosecutors filed an application to transfer from PERS to PFRS, and their request was consolidated with the Hancock group. Union County was permitted to intervene in the consolidated proceedings. Through the testimony of the Director of the Division of Criminal Justice and other county prosecutors, it became apparent that approximately 800 assistant prosecutors and deputy attorneys general would be eligible for membership in PFRS if the statutory scheme were to be read as the assistant prosecutors urged.

Despite the admission of a plethora of organization charts and what fairly can be characterized as tales of derring do by several of the assistant prosecutors, the present record is not entirely informative with respect to the daily activities of the average assistant prosecutor. For example, several assistant prosecutors testified that they commonly participated in raids and arrests of dangerous criminals, and routinely are called to crime scenes where they supervise the collection of evidence. While we decide this case only on the record before us, we add that, as appellate judges, we read literally thousands of transcripts each year, and it is extremely rare that we see the presence of assistant prosecutors performing these functions. Indeed, while assistant prosecutors are statutorily authorized to carry guns, *N.J.S.A.* 2C:39–6j, the record indicates that two Union County assistant prosecutors have been granted the right to carry a weapon. But, according to the hearing transcript, these individuals are commonly involved in dangerous investigations and the arrest of hardened and violent criminals. Several law enforcement officers presented by the Attorney General testified that assistant prosecutors rarely appear at crime scenes or make arrests, and that their activities are

restricted to providing legal advice to the police, presenting cases to the grand jury and trying matters in court. Despite the conflicting evidence on these critical subjects, the ALJ made no specific findings resolving these issues.

The ALJ's initial decision is somewhat amorphous. The ALJ apparently found that assistant prosecutors routinely supervise police work, but concluded the Legislature did not intend to include them in PFRS. The ALJ thus recommended denial of the request to transfer. The Board disagreed with the ALJ's functional analysis of the duties of assistant prosecutors. Specifically, the Board found that the essential duties of assistant prosecutors are to present cases to grand juries, represent the State at trial and on appeal, and to engage in preparation for these activities. While noting that some assistant prosecutors may be deeply involved in investigations, the Board concluded that they are trained as lawyers, not as police, and that, even in their investigatory role, their primary function is to provide legal advice based upon their professional judgment. The Board observed that all county prosecutors' offices have twin chains of command—one pertaining to assistant prosecutors and the other relating to detectives and investigators. Although in a test of wills, perhaps the command decisions of assistant prosecutors might prevail over the decisions of the investigative staff, the Board added that such paramountcy generally pertained to legal questions. The Board noted that the vagaries of the statutory language were clarified by the legislative history, which clearly revealed an intent to reduce and restrict membership in PFRS. Based upon these considerations, the Board denied the applications.

## II.

We begin our analysis with the operative statutory language. *N.J.S.A.* 43:16A–1(2)(a) provides alternative definitions of "policeman." The first section reads:

"Policeman" shall mean a permanent, full-time employee of a law enforcement unit as defined in section 2 of P.L.1961, c. 56 (C.52:17B–67) or the State, other than

an officer or trooper of the Division of State Police whose position is covered by the State Police Retirement System, whose primary duties include the investigation, apprehension or detention of persons suspected or convicted of violating the criminal laws of the State and who:

(i) is authorized to carry a firearm while engaged in the actual performance of his official duties;

(ii) has police powers;

(iii) is required to complete successfully the training requirements prescribed by P.L.1961, c. 56 (C.52:17B–66 et seq.) or comparable training requirements as determined by the board of trustees; and

(iv) is subject to the physical and mental fitness requirements applicable to the position of municipal police office established by an agency authorized to establish these requirements on a Statewide basis, or comparable physical and mental fitness requirements as determined by the board of trustees.

[*N.J.S.A.* 43:16A–1(2)(a).]

It is undisputed that this provision is not applicable because assistant prosecutors do not participate in the training program described and are not required to satisfy the fitness standards applicable to municipal police officers. Appellants contend, however, that they fall within the alternative definition set forth in the same section, which states:

The term shall also include an administrative or supervisory employee of a law enforcement unit or the State whose duties include general or direct supervision of employees engaged in investigation, apprehension or detention activities or training responsibility for these employees and a requirement for engagement in investigation, apprehension or detention activities if necessary, and who is authorized to carry a firearm while in the actual performance of his official duties and has police powers.

[*Ibid.*]

Read literally, the statutory language provides some support for appellants' argument. But our goal is to ascertain the intent of the Legislature with reasonable certainty, and "[w]here a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." *New Jersey Builders, Owners and Managers Ass'n v. Blair,* 60 *N.J.* 330, 338, 288 *A.*2d 855 (1972). "When all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms or the so-called formal rules of interpretation...." *Jersey City Chapter of Prop. Owner's Protective Ass'n v. City Council,* 55 *N.J.* 86, 100, 259 *A.*2d 698

(1969). We are instead obliged to construe the statute consonant with the breadth of its objectives and the commonsense of the situation. *Ibid.; see also Merin v. Maglaki,* 126 *N.J.* 430, 435, 599 *A.*2d 1256 (1992); *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980); *No Illegal Points v. Florio,* 264 *N.J.Super.* 318, 323, 624 *A.*2d 981 (App.Div.), *certif. denied,* 134 *N.J.* 479, 634 *A.*2d 526 (1993); *Paramus Substantive Certification No. 47 (Fanwood Bill),* 249 *N.J.Super.* 1, 8, 591 *A.*2d 1345 (App.Div.1991).

The legislative history is well documented. *N.J.S.A.* 43:16A–1(2)(a) was part of a series of amendatory laws intended to increase the retirement allowance of police officers and firefighters and restrict and reduce membership in PFRS. As we noted earlier, the statute eliminated the prior definition of policeman which consisted of a list of diverse job titles, and replaced it with "prescribed fundamental criteria." Senate State Gov't Comm., *Statement to S. 2602,* at 1 (June 23, 1988). As noted by the sponsor of the bill, Senator John Russo, the legislative concern was that the "liabilities of PFRS were inflated due to membership in the system by public employees who did not fulfill vital public safety functions." *Form Letter of New Jersey State Senator John F. Russo,* at 2 (Oct. 5, 1988). The sponsor indicated that enactment of the bill "would restrict future entry into PFRS to far fewer employees," resulting in a twenty percent reduction in membership, *id.* at 1–2, and a substantial "savings" to the public. Senate Revenue Fin. and Appropriations Comm., *Statement to S. 2602,* at 3 (Sept. 19, 1988).

The articulated objective was to encourage police officers and firefighters to "retire[ ] at a younger age, in order to protect the public." *Hearing on S. 2602 Before the Assembly State Gov't Comm.,* 203rd Legis., 2d Sess., at 18 (Feb. 6, 1989) (Statement of Douglas Forrester, Director, Div. of Pensions). It was said in the legislative hearings that police officers and firefighters were to be given enhanced benefits "because the nature of [their] duties ... requir[ed] a level of physical attributes [and energy] which [are] found, statistically speaking, among younger members." *Ibid.*

The underlying idea was to "facilitate" early retirement and "turnover within the system" by "giv[ing] better benefits." *Ibid.* In signing the bill, the Governor also emphasized the objective of "restrict[ing] eligibility for membership" by allowing only "police and fire personnel" to participate in the system. *Governor's Press Release for S. 2602,* at 2 (Dec. 19, 1989). Given the acknowledged purpose to restrict eligibility and to reserve to the young and the fit active roles in police and firefighter activities, it would defy the legislative design to add some 800 new members whose link to active engagement in apprehending criminals, as opposed to prosecuting them, is tenuous at best.

■ We add that our interpretation of *N.J.S.A.* 43:16A–1.2c(1) is supported by other statutes that were enacted along with that section. *N.J.S.A.* 43:16A–1.2c(1) provides in pertinent part:

Nothing in this amendatory and supplementary act shall be construed as authorizing:

(1) the transfer to or enrollment in the retirement system of any person who was ineligible for membership in or elected not to transfer to or enroll in the system prior to the effective date of this amendatory and supplementary act, unless the person is employed on or after the effective date in a new position which is not the same or related to the position in which the person was determined to be ineligible for membership in or elected not to transfer to or enroll in the system....

This section was added to the original bill by amendment. The Assembly State Government Committee issued a statement explaining the aim of the amendment:

[To] clarify that the administrative authority conferred upon the division to require the enrollment in PFRS of public safety personnel coming within the revised definitions of "policeman" or "fireman" does not extend to (a) a person who was ineligible for membership in or elected not to transfer to or enroll in the system prior to the effective date of this act, unless the person is employed on or after the effective date in a new and different position, or (b) an employee of any county, municipality or political subdivision thereof which has not adopted the PFRS....

[Assembly State Gov't Comm., *Statement to S. 2602,* at 2 (June 22, 1989).]

Since assistant prosecutors were not eligible for membership in PFRS prior to enactment of the amended definition of "policeman," their request for a transfer from PERS is barred by *N.J.S.A.* 43:16A–1.2c(1). This is in contrast to persons who quali-

fied as members of PFRS prior to the amended definition, but whose jobs no longer meet the definitional standards. The Legislature made it clear that such individuals could continue as members of PFRS. *See N.J.S.A.* 43:16A–3.1.

■ Our construction of the statute is also supported by the long-standing administrative practice and interpretation of the Division of Pensions. "An administrative agency's interpretation of a statute it is charged with enforcing is entitled to great weight." *In re Saddle River,* 71 *N.J.* 14, 24, 362 *A.*2d 552 (1976); *In re Glen Rock,* 25 *N.J.* 241, 246, 135 *A.*2d 506 (1957), *overruled on other grounds, City of N. Wildwood v. Board of Comm'rs of Wildwood,* 71 *N.J.* 354, 365 *A.*2d 465 (1976). Our Supreme Court has said that "the agency's interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable." *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327, 478 *A.*2d 742 (1984); *see also New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562–63, 384 *A.*2d 795 (1978); *Atlantic City Transp. Co. v. Director, Div. of Taxation,* 12 *N.J.* 130, 139, 95 *A.*2d 895 (1953). Of course, we are "in no way bound by [an] agency's interpretation of a statute." *Mayflower Sec. Co. v. Bureau of Secs.,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973); *see also Service Armament Co. v. Hyland,* 70 *N.J.* 550, 561, 362 *A.*2d 13 (1976). The construction of a law is a judicial, not an executive function. *See Social Sec. Bd. v. Nierotko,* 327 *U.S.* 358, 369, 66 *S.Ct.* 637, 643, 90 *L.Ed.* 718, 727 (1946). But the Division's interpretation of *N.J.S.A.* 43:16A–1(2)(a) is entitled to considerable weight particularly where, as here, it comports with the clearly expressed legislative purpose.

■ In reaching our conclusion, we do not denigrate the vital law enforcement role performed by assistant prosecutors. Subject to the authority of the Attorney General, the county prosecutors are the chief law enforcement officers of their respective counties. *N.J.S.A.* 52:17B–98; *see Falcone v. De Furia,* 103 *N.J.* 219, 226, 510 *A.*2d 1174 (1986); *State v. Winne,* 12 *N.J.* 152, 171, 96 *A.*2d 63 (1953). They are obliged to "use all reasonable and

lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *N.J.S.A.* 2A:158–5. County prosecutors have "an obligation to detect and arrest, as well as to obtain indictments and prosecute them." *State v. Winne,* 12 *N.J.* at 174, 96 *A.*2d 63. In executing these functions, they may "personally detect, arrest and convict" offenders. *Id.* at 168, 96 *A.*2d 63. County and municipal police officers have a correlative duty to cooperate with the county prosecutors in the enforcement of the criminal laws. *N.J.S.A.* 52:27B–11(2)b. To aid the county prosecutor, the Legislature has authorized the employment of assistant prosecutors, detectives and investigators. *N.J.S.A.* 2A:158–15. While the authority of county detectives and investigators is limited by statute, the duties of assistant prosecutors are not statutorily defined. As the extensive record indicates, the duties of assistant prosecutors vary greatly from county to county. While assistant prosecutors in some counties actively engage in investigations from their inception, others do not.

■ Despite this diversity of roles, we find substantial credible evidence in the record supporting the Board's conclusion that the essential and primary role of assistant prosecutors is to present cases to the grand jury and represent the State at trial and on appeal. They are lawyers first and foremost. Assistant prosecutors are trained as lawyers, not as police officers. When they deal with other law enforcement agencies, their essential responsibility is to provide legal advice. While assistant prosecutors commonly assist in the training of police officers, their basic function is to educate them on the requirements of the law. As lawyers, assistant prosecutors must comply with a code of professional ethics that does not govern police officers.

We thus conclude that the Board's functional analysis of the duties of assistant prosecutors impels the conclusion that they do not fall within the definition of "policeman" and are thus not entitled to membership in PFRS.

Affirmed.