**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3773-22

JAMES GLUCK,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF
THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued September 8, 2025 – Decided September 24, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Board of Trustees of the Public Employees' Retirement System, PERS No. xx6053.

Michael P. DeRose argued the cause for appellant (Crivelli, Barbati & DeRose, LLC, attorneys; Michael P. DeRose, of counsel and on the briefs).

Jeffrey D. Padgett, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Jeffrey D. Padgett, on the brief).

PER CURIAM

Petitioner James Gluck, Esq. appeals from a June 26, 2023 final administrative determination of respondent, the Board of Trustees of the Public Employees' Retirement System (Board), retroactively finding him ineligible for retirement benefits from the Public Employees' Retirement System (PERS) related to his service as legal counsel to the Beechwood Sewage Authority (Authority). Petitioner argues he was at all times an employee of the Borough of Beechwood (Borough) and Authority and the Board's retroactive determination he was an independent contractor is arbitrary, capricious and unreasonable. We disagree and affirm.

I.

The relevant facts are undisputed. Petitioner enrolled in PERS in 1998 after he was hired as a public defender for the Borough. In May 1999, petitioner entered into a Professional Services Agreement (PSA) with the Authority to serve as its counsel pursuant to Borough Resolution No. 05-19-99. The Borough filed a Report of Transfer, dated May 21, 1999, transferring petitioner's employment from the Borough to the Authority.

A-3773-22

On the same day, petitioner executed an enrollment application for PERS, which also noted his service time as the Borough's public defender through May 14, 1999.

The PSA in pertinent part provided:

> [Petitioner] shall furnish all equipment and materials and shall perform the services as provided in this Agreement and as awarded to it for a partial consideration of Three Thousand [and] 00/100 ($3,000.00) [dollars] per year commencing on February 1, 1999. Said sum shall be payable to [petitioner] as a salaried employee of the Authority on a monthly basis for legal services rendered in the position of Attorney for the [Authority] for the fiscal year 1999 in strict accordance with the contract as the word "contract" is hereinafter defined and in accordance with all other terms and provisions.

Thereafter, petitioner served as counsel to the Authority for successive annual terms from 2000 through 2008. According to the Board "[c]ontemporaneous with the passing of resolutions, the [Authority] entered into [PSAs] with petitioner," that varied slightly from year to year.

The first PSA was between the Authority and petitioner, "of the firm of James J. Gluck, P.A." The parties entered into the same PSA in 2000 and 2001, although petitioner's firm changed to "Gluck & Allen, L.L.C." From 2002 to 2005, petitioner and the Authority entered into PSAs with similar overall terms as in prior years, except for the additional language permitting a member of

3

petitioner's firm "to act under the terms and conditions of this contract as an alternate." This practice was repeated in 2006 and 2007 to permit another newly added partner to the firm to act as an alternate counsel to the Authority in petitioner's absence. Petitioner received an annual W-2 from the Authority for the entirety of his tenure from 2002 to 2008. He contributed to PERS from 1999 until his resignation, effective February 29, 2008.

On December 15, 2009, petitioner returned to the Authority as its general counsel under a new resolution, which stated the name of petitioner's firm as "Gluck & Allen, L.L.C., Attorneys at Law." Petitioner remained employed as general counsel from December 15, 2009 to June 21, 2022, wherein he was paid monthly and received an annual W-2.

## II.

In 2007, the Legislature enacted significant and sweeping reforms to the PERS. The enactment of Public Law 2007, L. 2007, c. 92 (Chapter 92), codified at N.J.S.A. 43:15C-1 to -15, created the Defined Contributions Retirement Program (DCRP), as an alternative to PERS, and became effective on July 1, 2007. Through this system, the Legislature hoped to "encourag[e] qualified individuals to enter and remain in public service." Ibid. (quoting Masse v. Bd. of Trs., Pub. Emps. Ret. Sys., 87 N.J. 252, 261 (1981)).

A-3773-22

The Chapter 92 reforms also included the enactment of related statutes directed to modify PERS. Relevant here, N.J.S.A. 43:15A-7.2 changed eligibility rules for pension participation by individuals serving in certain government positions pursuant to professional service contracts or as independent contractors, and states in relevant part:

> Any person becoming an employee of the State or other employer after January 2, 1955 . . . and other than those whose appointments are seasonal, becoming an employee of the State or other employer after such date, including a temporary employee with at least one year's continuous service. The membership of the retirement system shall not include those persons appointed to serve as described in paragraphs (2) and (3) of subsection a. of [N.J.S.A. 43:15C-2], except a person who was a member of the retirement system prior to the effective date [July 1, 2007] of sections 1 through 19 of [Chapter 92] ([N.J.S.A.] 43:15C-1 through [N.J.S.A.] 43:15C-15, [N.J.S.A.] 43:3C-9, [N.J.S.A.] 43:15A-7, [N.J.S.A.] 43:15A-75 and [N.J.S.A.] 43:15A-135) and continuously thereafter.
>
> [(Second alteration in original).]

Further, N.J.S.A. 43:15A-7.2(b) precludes any person who qualifies as an independent contractor from PERS membership after December 31, 2007, stating:

> A person who performs professional services for a political subdivision of this State or a board of education, or any agency, authority or instrumentality thereof, shall not be eligible, on the basis of

performance of those professional services, for membership in [PERS], if the person meets the definition of independent contractor as set forth in regulation or policy of the federal Internal Revenue Service [(IRS)] for the purposes of the Internal Revenue Code [(I.R.C.)].  Such a person who is a member of the retirement system on the effective date of [Chapter 92] shall not accrue service credit on the basis of that performance following the expiration of an agreement or contract in effect on the effective date.

Following the enactment of N.J.S.A. 43:15A-7.2(b), on or about May 6, 2008, the Authority received notice from John Megariotis, then-Deputy Director of Finance, concerning pension eligibility for employees that perform services under PSAs.  Megariotis stated, "a full-time, in-house counsel, however, may be eligible to continue in PERS if the counsel was a member of PERS prior to July 1, 2007, the employment is not tied to a professional services contract, and the individual does not meet the independent contractor test."  He further advised that all questions concerning PSAs and independent contractors should be forwarded to the Division of Pension and Benefits (Division) in writing for clarification.

Approximately seven years after the enactment of N.J.S.A. 43:15A-7.2(b), on November 7, 2014, Susan Grant, then-acting director of the Pension Fraud and Abuse Unit (PFAU), informed petitioner in writing he was ineligible for enrollment in PERS after December 31, 2007—the effective date of Chapter 92

6

—because he should have been classified as an independent contractor for the entirety of his service with the Authority.

However, on April 27, 2015, the Division advised petitioner by letter that he was "eligible to purchase" thirty-eight months of former membership service related to his prior government employment for $1,644.43. Petitioner paid the requested amount to buy back the thirty-eight months of former membership service time and the Division accepted his payment.[1]

On July 31, 2016, Grant reevaluated petitioner's service and again determined petitioner was ineligible for service credit specifically from February 1, 2002, not 1999, as previously determined. She noted the modification was due to petitioner's 2002 PSA, which provided that members of petitioner's firm could assume his duties as counsel to the Authority. Grant based her determination on the IRS twenty-factor test and information from petitioner's law firm's website, which showed that petitioner openly advertised his services to other clients and public entities.

The Board accepted Grant's 2016 determination and retroactively terminated petitioner from PERS from February 1, 2002 to February 2, 2008

---

[1] Petitioner later argues that the Division's advice to purchase service credit or buy back time is indicative of the reasonableness of his belief he was a participant in the pension system.

A-3773-22

under N.J.S.A. 43:15A-7.2(b), as he was considered an independent contractor, and from December 1, 2008 through to the then-present date of 2016, citing that he was retained pursuant to a PSA and thus is ineligible for PERS enrollment under N.J.S.A. 43:15A-7.2(a).

Kristin Conover, Grant's successor, undertook an additional review of petitioner's eligibility for PERS in April 10, 2019, following our January 2019 remand in a case addressing a similar issue.[2]  After applying the IRS twenty-factor test, however, Conover reached the same conclusion as her predecessor and denied eligibility.[3]  Thereafter, on July 8, 2019, the Board notified petitioner it was adopting the Division's determination.

Petitioner appealed and the matter was transmitted to the Office of Administrative Law (OAL) for a hearing as a contested case before an Administrative Law Judge (ALJ).

---

[2] Cohen v. Board of Trustees of the Public Employees Retirement System, No. A-1219-16 (App. Div. Jan. 24, 2019).

[3] Conover also cited to the IRS twenty-factor test and information concerning petitioner's law firm, including that petitioner's law firm had provided a substitute for him eleven times between December 2009 and July 2018.

A-3773-22

Conover, petitioner, and petitioner's accountant testified at the OAL hearing. At the conclusion of the case the ALJ issued a thorough and well-reasoned written initial decision summarizing his findings as follows:

> [Petitioner] was assigned tasks by the [Authority] commissioners via email, cell phone or office line and could not perform any work without their direction. He had a supervisor who was the chairman of the [Authority]. Although there was no training directly from [Authority], he received training through the Bar Association on public entity law. Most of the work he did himself but sometimes he had individuals from his firm cover for him in his absence. The [Authority] did supply some clerical support and supplies, and there were at least two letters sent out on [firm] letterhead. But that was not the norm. [Petitioner] did not have any ability to hire or fire or supervise any employees from [Authority], he was an at will employee and interestingly, never shared any income derived from the [Authority] with [his law firm].

The ALJ concluded that applying the IRS twenty-factor test, petitioner was an independent contractor, not an employee of the Authority for the relevant time periods. Petitioner filed exceptions to the ALJ's determination, which were considered by the Board along with the ALJ decision and exhibits.

The Board adopted the ALJ's decision with one modification, finding factor sixteen (Realization of Profit Loss) supported a characterization of petitioner as an employee, but noted that this change did not alter the overall finding of ineligibility for PERS benefits from February 1, 2002 through

9

February 29, 2008, and December 1, 2009 through the present. The Board issued its final administrative decision on June 26, 2023. This appeal followed.

III.

Our review of decisions by administrative agencies is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011); McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). We generally "recognize that agencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009), overruled in part on other grounds, 198 N.J. 215 (2009) (omission in original) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)). As a result, we will sustain an administrative agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." McKnight, 476 N.J. Super. at 162 (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). We only determine:

> (1) whether the agency decision follows the law; (2) whether the decision is supported by substantial evidence in the record; and (3) whether in applying the law to the facts, the administrative agency "clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors."

> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

Further, "'[a]n administrative agency's interpretation of a statute it is charged with enforcing is entitled to great weight.'" In re Eligibility of Certain Assistant Union Cnty. Prosecutors to Transfer to PFRS under N.J.S.A. 43:16A1 et seq., 301 N.J. Super. 551, 561 (App. Div. 1997) (quoting In re Saddle River, 71 N.J. 14, 24 (1976)); accord In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 415, 431 (2004). "'[W]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible.'" St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005) (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004)). Our courts have extended this level of deference to state agencies that administer pension statutes. See, e.g., Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007).

"This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010) (citing Kasper v. Bd. of Trs. of the Teachers' Pension & Annuity Fund, 164 N.J. 564, 580-81

11

(2000)). However, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue[.]'" Utley v. Bd. of Rev., 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). Our review of a "strictly legal issue" is de novo. In re Langan Eng'g. & Env't Servs., Inc., 425 N.J. Super. 577, 581 (App. Div. 2012) (citing Utley, 194 N.J. at 551).

The party challenging the administrative action bears the burden of showing that the agency's decision did not meet that standard. Lavezzi v. State, 219 N.J. 163, 171 (2014). However, we do not defer to an agency's conclusions on "strictly legal issue[s]." Hemsey, 198 N.J. at 224 (quoting In re Carter, 191 N.J. 474, 483 (2007)).

To determine whether an individual who provides professional services is employed as an employee or as an independent contractor, and thus ineligible for PERS participation under N.J.S.A. 43:15A-7.2(b), our court has endorsed the application of the twenty-factor test. See Rev. Rul. 87-41 at 11- 18; see also Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 350-51 (App. Div. 2010); Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 393 N.J. Super. 524, 542 (App. Div. 2007), rev'd on other grounds, 198 N.J. 215 (2009); Stevens v. Bd. of Trs. of the Pub. Emps.' Ret. Sys., 294 N.J. Super. 643, 653 n.1 (App.

12

Div. 1996).  "The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed."  Rev. Rul. 87-41 at 10-11.

The twenty factors under the IRS test are:

> 1.  INSTRUCTIONS.  A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee.  This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions.

> 2.  TRAINING.  Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

> 3.  INTEGRATION.  Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control.

> 4.  SERVICES RENDERED PERSONALLY.  If the Services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

> 5.  HIRING, SUPERVISING, AND PAYING ASSISTANTS.  If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job.  However, if one worker hires,

supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor and under which the worker is responsible only for the attainment of a result, this factor indicates an independent contractor status.

6. CONTINUING RELATIONSHIP. A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

7. SET HOURS OF WORK. The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

8. FULL TIME REQUIRED. If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor on the other hand, is free to work when and for whom he or she chooses.

9. DOING WORK ON EMPLOYER'S PREMISES. If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere.

10. ORDER OR SEQUENCE SET. If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the

14

established routines and schedules of the person or persons for whom the services are performed.

11. ORAL OR WRITTEN REPORTS. A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control.

12. PAYMENT BY HOUR, WEEK, MONTH. Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on straight commission generally indicates that the worker is an independent contractor.

13. PAYMENT OF BUSINESS AND/OR TRAVELING EXPENSES. If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities.

14. FURNISHING OF TOOLS AND MATERIALS. The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

15. SIGNIFICANT INVESTMENT. If the worker invests in facilities that are used by the worker in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities

A-3773-22

indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer- employee relationship.

16. REALIZATION OF PROFIT OR LOSS. A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee.

17. WORKING FOR MORE THAN ONE FIRM AT A TIME. If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

18. MAKING SERVICE AVAILABLE TO GENERAL PUBLIC. The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

19. RIGHT TO DISCHARGE. The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer.

20. RIGHT TO TERMINATE. If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

A-3773-22

[Rev. Rul. 87-41, 1987-1 C.B. 296.]

IV.

As a preliminary matter, we recognize petitioner's service as counsel for the Authority began in 2002 and required his enrollment in PERS. Moreover, it is undisputed that throughout his service, petitioner made regular contributions to PERS. Nevertheless, with the enactment of N.J.S.A. 43:15A-7.2(b) and the application of the IRS twenty-factor test, we are satisfied that the Board's final decision, adopting the ALJ's findings and conclusion that petitioner met the definition of an independent contractor and is therefore retroactively ineligible for PERS benefits, is firmly rooted in the law, and thus, is not arbitrary, capricious or unreasonable. In re Stallworth, 208 N.J. at 194; Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980).

Before us, petitioner principally argues the Board's final decision was arbitrary, capricious and unreasonable as the record demonstrates that he was an employee of the Authority for the relevant time periods. He specifically disputes the ALJ's determination of several of the pertinent IRS factors, and relying on Mastro v. Retirement System, 266 N.J. Super. 445 (App. Div. 1993), he urges us to consider how "[c]ase law . . . has confirmed the possibility of the existence of both an employee and/or an independent contractor status for a municipal

17

attorney." Our holding in <u>Mastro</u>, decided in 1993, however, is not instructive because of the sweeping changes in the law following the 2007 enactment of Chapter 92. We, therefore, address petitioner's arguments regarding the ALJ's consideration of the IRS factors. Additionally, we address whether the doctrines of equitable estoppel and laches require reversal of the Board's retroactive determination petitioner is ineligible for PERS benefits related to his sixteen years of service as counsel to the Authority.

First, petitioner concedes the ALJ's use of the IRS twenty-factor test in determining an employee's eligibility for PERS while simultaneously urging us to consider as an alternative, the definition of employee in I.R.C. § 3121(d)(2). He maintains, "[f]or employment tax purposes, an employee is defined by [I.R.C. §] 3121(d)(2) as 'an individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.'"

We reject petitioner's invitation to adopt an alternative test to the IRS twenty-factor test relied on by the ALJ on the pivotal question whether he is an employee or independent contractor eligible for PERS benefits. We do so based on the express language of N.J.S.A. 43:15A-7.2(b), which requires an analysis of whether the "person meets the definition of independent contractor as set forth

in regulation or policy of the federal [IRS] for the purposes of the [IRC]," and case law which has long recognized the use of the IRS twenty-factor test under Revenue Ruling 87-41 as a guide. See Francois, 415 N.J. Super. at 350-51.

Specifically addressing the IRS factors, petitioner asserts the ALJ failed to consider "numerous indicators of an employer-employee relationship in the underlying record for both time periods in question that apply to other relevant factors at issue, such as [f]actors one (Instructions), three (Integration), and eight (Full-time Required)," gave undue weight to the firm aspects of his relationship with the Authority, and that the Board failed to consider the totality of the circumstances. Petitioner does not dispute the ALJ's findings as to all of the factors.

Petitioner's arguments are belied by the record, which shows the ALJ reviewed petitioner's contractual obligations and separately addressed each of the applicable IRS factors. As to factor one (Instructions), the ALJ determined that although the Authority scheduled its meetings and prepared the agenda, it "did not direct how nor where [petitioner] completed the request[ed]" work, and that "all of the resolutions and/or work completed by [petitioner] was either at his home or in his firm."

In discussing factor two (Training), petitioner contends this factor "should also be weighed in favor of deeming [him] an 'employee' because he was required to remain current on local government law." The ALJ concluded "[petitioner], as an attorney at law, did not require training from the township." For this factor, the ALJ relied on credible evidence establishing that the Authority did not require petitioner to complete the same general workplace or human resources trainings required of its regular employees, a point petitioner does not dispute. Petitioner's argument ignores the undisputed fact that he held himself out as counsel for other government agencies and private clients that had nothing to do with the Authority — entities where he presumably would have had to rely on the same skills. Thus, his training and attendance at the League of Municipalities and continuing legal education classes, not specifically required or provided by the Authority are not indicative of his status as an employee entitled to PERS benefits.

As to factor three (Integration), the ALJ concluded that because petitioner was appointed for a yearly term by vote and resolution and there was no continuing relationship with the Authority that "militates towards an independent contractor." Petitioner argues that the ALJ's decision insufficiently assessed this factor as the record shows, his use of substitute counsel was limited

to those occasions where he had a conflict or was incapacitated due to illness, and his PSAs expressly provided for substitutions. He concludes by arguing "there is no support in the record for the assertion that [he] 'was not restricted from delegating his duties.'"

Again, petitioner's argument is belied by the express language of the PSAs in effect at the time, which unequivocally permitted him to use alternate counsel from his firm from 2002 through at least 2007, "to act under the terms and conditions of this contract as an alternate." Against this backdrop, we disagree with petitioner's contention the ALJ insufficiently or incorrectly assessed this factor.

Petitioner further argues the ALJ's finding he was appointed on a yearly basis by vote and resolution and thus there is "no continuing relationship" with the Authority under factor six (Continuing Relationship) is contrary to the record, which shows he was only appointed on a yearly basis during the first time period from 2002 to 2008, not after becoming general counsel in 2009.

We agree with petitioner that in assessing this factor, the ALJ did not differentiate between these timeframes; nevertheless, we discern any such error was not capable of producing an adverse result. R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature

21

as to have been clearly capable of producing an unjust result.") when viewed as a whole with the other IRS factors. Accordingly, we are satisfied the ALJ's incomplete analysis of this factor does not warrant reversal of the Board's decision. Additionally, we note that when petitioner was rehired in 2009 to serve as general counsel nothing about his actual duties with the Authority changed. He remained a partner in his law firm and continued to provide legal services to the Authority on a part-time basis.

As to factor eight (Full-time Required), petitioner argues his "undisputed testimony demonstrated that his job duties and responsibilities for the two (2) relevant time periods effectively remained the same," and the Authority "expected him to be on-call [twenty-four]-hours per day." As to this factor, the ALJ reasoned petitioner characterized his position as part-time and was free to conduct business outside the scope of his position as counsel for the Authority. Here, the ALJ correctly concluded petitioner was not a full-time employee, which is not in dispute and that his work with the Authority accounted for seven to ten percent of his income, which militated towards his status as an independent contractor.

Additionally, in weighing the remaining applicable factors, the ALJ found factors ten and eleven, (Order or Sequence Set) and (Oral or Written Reports)

respectively, suggestive of an employer-employee relationship. The ALJ noted the township clerk scheduled all meetings and prepared the agenda. As to factor eleven (Oral or Written Reports), the ALJ relied on the evidence showing petitioner was not required to provide reports to the Authority on a regular basis and instead provided information as needed, which militated towards an employer-employee relationship.

Petitioner further argues he should not be disqualified from PERS for the period from 2002 to 2008 while working under a PSA or based on N.J.S.A. 43:15A-7.2(b) for the period from 2009 to 2016 because he was a W-2 employee of the Authority. On this point, we discern no error on the part of the Board in accepting the ALJ's analysis of this factor as the Authority's issuance to petitioner of a W-2 is not dispositive on the issue of employment for PERS purposes. Moreover, N.J.S.A. 43:15A-7.2(b) expressly prohibits a person who serves pursuant to PSAs from eligibility for PERS benefits, if the person is defined as an independent contractor as set forth in the IRS factors. Additionally, based on this record, petitioner's relationship with the Authority was functionally unchanged during both timeframes as he continued to perform the same duties with no substantive changes in job responsibilities.

With respect to factors thirteen (Payment of Business and/or Traveling Expenses), seventeen (Working for More Than One Firm at a Time), and eighteen (Making Service Available to General Public), the ALJ reasonably determined that the Authority did not compensate petitioner for business or travel expenses. Likewise, the ALJ found credible evidence that petitioner bore the costs and expenses of his own legal practice and performed similar legal services to the firm's public and private clients. The Board, however, modified the ALJ's decision as to factor sixteen (Realization of Profit or Loss), concluding it "supports a characterization of the member as an employee."

Petitioner next contends his position with the Authority is contemplated by statute, explaining N.J.S.A. 40:14A-5(e) provides that:

> [E]very sewage authority may also, without regard to the provision of Title 11 of the Revised Statutes, appoint and employ a secretary and such professional and technical advisers and experts and such other officers, agents and employees as it may require, and shall determine their qualifications, terms of office, duties and compensation.
>
> [N.J.S.A. 40:14A-5(e).]

Petitioner's argument does not establish his eligibility for pension benefits. Rather, the statute merely authorizes the appointment and employment of various professionals.

A-3773-22

Additionally, petitioner asserts that his earnings were PERS-eligible based exclusively on the method in which he was compensated, citing Fasolo v. Bd. of Trs., 181 N.J. Super. 434 (App. Div. 1981). Petitioner's reliance on Fasolo, like Mastro wholly ignores the current state of the law and our required analysis subject to Chapter 92 as Fasolo was decided approximately twenty-six years before Chapter 92 became effective.

Accordingly, having considered petitioner's arguments in the context of our deferential standard of review and the applicable law, we are satisfied that the ALJ's findings, as adopted and modified by the Board, are supported by the record and warrant our deference.

V.

We next turn to petitioner's argument the Board's decision retroactively finding him ineligible for PERS is unreasonable and inequitable given his longstanding, compulsory membership and his reliance on the pension system. He argues that when he was hired by the Borough, he was compelled to contribute to PERS as a condition of employment, and "to then state, in 2015, that he was not eligible for almost the entirety of that period, is unconscionable." He maintains the Division's April 2015 correspondence advising him that he was

eligible to purchase service credit, which he paid, is indicative of the Division's misinformation that he relied on to his detriment.

For its part, the Board asserts that it is vested with the general responsibility for the proper operation of the retirement system under N.J.S.A. 43:16A-13(1), including the responsibility to correct errors. It maintains that "[a]n individual who is 'eligible for benefits' is entitled to a liberal interpretation of the pension statute, but 'eligibility [itself] is not to be liberally permitted.'" Kraynick v. Bd. of Trs., Pub. Emps.' Ret. Sys., 412 N.J. Super. 232, 237 (App. Div. 2010) (emphasis added). They further maintain the doctrine of equitable estoppel is "rarely invoked against governmental entities" and "there is no remedy to be gained from PERS, which is statutorily obligated to make these determinations."

There is no doubt petitioner worked for over sixteen years under the impression that he was a member of PERS and entitled to a retirement pension. It is also undisputed that he purchased service credit long after the enactment of Chapter 92 and the Division accepted his payment. Nevertheless, in addressing plaintiff's equitable claims, we are reminded "[in] all cases, equity follows the law." Berg v. Christie, 225 N.J. 245, 280 (2016). "Equity will generally conform to established rules and precedents, and will not change or unsettle

rights that are created and defined by existing legal principles." W. Pleasant-CPGT, Inc. v. U.S. Home Corp., 243 N.J. 92, 108 (2020) (quoting Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183 (1985)). Thus, the enactment of N.J.S.A. 43:15A-7.2(b), barring independent contractors from participating in PERS both prospectively and retroactively, forecloses plaintiff's claims for equitable relief. See, e.g., In re Quinlan, 137 N.J. Super. 227, 261 (Ch. Div. 1975), modified and remanded on other grounds, 70 N.J. 10, (1976) ("When positive statutory law exists, an equity court cannot supersede or abrogate it.").

Notwithstanding petitioner's arguments regarding the deleterious impact of the Board's decision on his personal finances, we are constrained to conclude the Board acted consistent with the applicable law and its decision is therefore neither arbitrary, capricious or unreasonable. McKnight, 476 N.J. Super. at 162 (quoting Herrmann, 192 N.J. at 27-28).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

27

A-3773-22