42 A.3d 240 (2012)
425 N.J. Super. 577
In the Matter of the Appeal of LANGAN ENGINEERING & ENVIRONMENTAL SERVICES, INC.
Docket No. A-2145-11T3
Superior Court of New Jersey, Appellate Division.
Argued April 24, 2012.
Decided May 15, 2012.
*241 Angelo J. Genova argued the cause for appellant Langan Engineering & Environmental Services, Inc. (Genova Burns Giantomasi & Webster, attorneys; Mr. Genova, of counsel; Rebecca Moll Freed, Newark, on the briefs).
Beth Leigh Mitchell, Assistant Attorney General, argued the cause for respondent Department of the Treasury, Division of Purchase and Property (Jeffrey S. Chiesa, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Mitchell, on the brief).
Before Judges BAXTER, NUGENT and CARCHMAN.
The opinion of the court was delivered by
BAXTER, J.A.D.
Langan Engineering & Environmental Services, Inc. appeals from a final agency decision of the Department of Treasury (Treasury), Division of Purchase and Property (Division), determining that, as of the due date for bids, August 2, 2011, appellant was disqualified from being awarded State contracts because appellant had made a political contribution within the eighteen-month period preceding appellant's submission of a bid. As a result of that determination, Treasury deemed appellant disqualified from the October 5, 2011 New Jersey Schools Development Authority (SDA) procurement. We reject appellant's challenge to the final agency decision. We conclude that: 1) Treasury's ineligibility determination was correct; 2) the inclusion of contributions to legislative leadership committees in Executive Order Number 117 (EO 117) is not unconstitutional; and 3) pursuant to the governing statute, N.J.S.A. 19:44A-20.14, Treasury properly concluded that the eighteen-month look-back period commences when bids are due. We affirm.

I.
On April 7, 2010, appellant made a $500 contribution to Assembly Republican Victory 2011, a legislative leadership committee. Some fourteen months later, on June 23, 2011, SDA issued a request for proposals (RFP), seeking bids for a two-year contract for site environmental consulting services in the planning and construction of school facilities projects. Appellant submitted a bid on August 2, 2011, the date bids were due. After the bids were received, SDA evaluated each submission, ranked the bidders and negotiated uniform pricing with each of them.
The SDA Board of Directors adopted a resolution awarding the site environmental consulting contract to fifteen firms, including *242 appellant, pending "approval of all contract and related documentation" by Treasury. At SDA's request, the Division's Chapter 51[1] Unit[2] reviewed all fifteen firms for Chapter 51/EO 117 clearance. Thirteen firms were approved; appellant and another firm were rejected.
SDA's Procurement Director notified appellant that Treasury had ruled that appellant could not be awarded a contract that exceeded $17,500 in value with a State department, agency or authority, and, as a result, appellant was disqualified from the current SDA procurement. On December 1, 2011, appellant sent Treasury a detailed letter of protest, challenging Treasury's assertion that the statutory disqualification began on the date the bids were due, and then encompassing the preceding eighteen months. Appellant instead contended that the disqualification period began on the day the political contribution was made, and continued for the next eighteen months. On December 20, 2011, Treasury issued the final agency decision that is the subject of this appeal, rejecting appellant's argument. Treasury notified appellant that, in the context of a publicly advertised contract, the statutory phrase in N.J.S.A. 19:44A-20.14"within the eighteen months immediately preceding the commencement of negotiations for the contract or agreement"refers to the eighteen months immediately preceding the date when bids are due to the State contracting agency. Because appellant was disqualified on August 2, 2011, the date when proposals for the contract were due to SDA, appellant was not, according to Treasury, eligible for the award of the SDA contract.
Appellant appealed, and on January 25, 2012, we denied its motion for a stay of the disqualification pending appeal.

II.
The principles governing judicial review of administrative agency actions are well known. As the Court recently observed:
Although in reviewing the decision of an administrative agency, we must give deference to the agency's findings of facts, and some deference to its interpretation of statutes and regulations within its implementing and enforcing responsibility, we are in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.
[Utley v. Bd. of Review, 194 N.J. 534, 551, 946 A.2d 1039 (2008) (internal quotation marks and citations omitted).]
As Treasury's December 20, 2011 final decision resulted from the agency's "determination of a strictly legal issue," our review is de novo. Ibid.
The relevant statute, N.J.S.A. 19:44A-20.14, provides:
The State or any of its purchasing agents or agencies or those of its independent authorities, as the case may be, shall not enter into an agreement or otherwise contract to procure from any business entity services or any material, supplies or equipment, or to acquire, sell, or lease any land or building, where the value of the transaction exceeds $17,500, if that business entity has solicited or made any contribution of money, or pledge of contribution, including in-kind contributions to a candidate committee or election fund of any candidate *243 or holder of the public office of Governor or of Lieutenant Governor, or to any State or county political party committee: (i) within the eighteen months immediately preceding the commencement of negotiations for the contract or agreement[.]
[(Emphasis added).]
The issue in this appeal is the meaning of the phrase "the commencement of negotiations for the contract or agreement." Appellant argues that, consistent with the plain meaning of Chapter 51, N.J.S.A. 19:44A-20.14, a business entity that has made a political contribution may not participate in a government contract exceeding $17,500 for eighteen months after making the contribution. For its part, Treasury contends that the statutory language in question requires disqualification if the political contribution was made within the eighteen months preceding the date that bids are due to the State contracting agency.
The meaning and application of Executive Order 117[3] and Chapter 51 are controlled by the language and intent of Chapter 51. Wilson v. City of Jersey City, 209 N.J. 558, 572, 39 A.3d 177 (2012). The parties agree that the difficulty in applying the disputed language to the present matter stems from the fact that, because not all state agencies have the authority to negotiate, not all State contracts have a "commencement of negotiations" period in the traditional sense of the term. For agencies such as SDA, which have not been granted explicit authority by statute to negotiate, all communications between the bidder and the public entity occur through an advertised RFP followed by a question-and-answer period, advertised additions to the RFP, submission of bids, and acceptance of bids, rather than through back-and-forth negotiations. See, e.g., N.J.S.A. 40A:11-4; N.J.S.A. 52:34-12a. SDA typically proceeds by publishing an RFP for submission of proposals by vendors. See N.J.A.C. 19:38-1.1 to -5.1. In light of the way in which SDA procures contractsthrough the RFP process, rather than a course of negotiationsits publicly-bid contracts are not "negotiated."
To apply the statutory phrase "commencement of negotiations" in the context of the SDA bidding process, we start by reviewing commonly accepted definitions of the term "negotiations." As Treasury correctly argues, the term "negotiations" suggests that the time period under scrutiny occurs at some point prior to the contract's execution and the award of the contract to a specific party. The definition of the term "negotiations" includes "the process of submission and consideration of offers until an acceptable offer is made, and accepted, or until it becomes apparent that no acceptable offer will be made." United States v. John McShain, Inc., 258 F.2d 422, 424 (D.C.Cir.) (concerning formation of a federal government contract), cert. denied, 358 U.S. 832, 79 S.Ct. 52, 3 L.Ed.2d 70 (1958); see also 1 Corbin on Contracts § 2.1 (Rev. ed.1993) (stating that preliminary negotiations to a contract include all offers and counteroffers and may include bids). We conclude that, in the RFP context, the term "negotiations" means the time when the government agency takes the bids into consideration or scrutinizes them.
That conclusion is consistent with the principle that "[a] bid submitted in response to an RFP is an offer that confers *244 an option to contract upon the State." State v. Ernst & Young, L.L.P., 386 N.J.Super. 600, 612, 902 A.2d 338 (App. Div.2006) (emphasis added) (citation and internal quotation marks omitted). It is also consistent with the well-settled principles that apply in the public bidding context. As one leading treatise has explained:
[When] tenders or bids are advertised for by public corporations, municipalities, counties, or states, ... [t]he rules governing such bidding are analogous to the rules governing auction sales.... [A]n ordinary advertisement for bids or tenders is not itself an offer, but the bid or tender is an offer which creates no right until accepted. Even though the charter or ordinances of a municipality [may] expressly require that a contract shall be awarded to the lowest responsible bidder, ... [the municipality] need not make any contract at all, since there is no obligation to accept any offer....
In the [context] of public contracts, certain additional formalities are often required by statute or by the request for bids under such statute, such as the execution of a written contract or the requirement that a satisfactory bond be furnished. In such cases, even after acceptance of the bid has occurred, no contract is formed until the requisite formality has been complied with.
[1 Williston on Contracts § 4:13 (4th ed.2007).]
In accord with these principles, which establish that no vested interest arises at the time a bid is submitted, but that the bidding process merely "confers an option" upon the State to issue the contract, we deem the point at which bids are submitted to be the time when "negotiations" occur. Stated differently, because the submission of the bid is the triggering event culminating in the eventual award of a contract, and because the term "negotiations" suggests a point in time at the beginning of the contracting process, in the Chapter 51 context, the term "negotiations" describes the point in time when bids are submitted. Consequently, we conclude that the agency's receipt of bids constitutes the "commencement of negotiations."
Such an interpretation of N.J.S.A. 19:44A-20.14 validates the policy considerations articulated in N.J.S.A. 19:44A-20.13, which provides that Chapter 51 was intended to "insulate the negotiation and award of State contracts from political contributions that pose the risk of improper influence, purchase of access, or the appearance thereof." The statutory reference to both "negotiation" and "award" of State contracts demonstrates that the focus of N.J.S.A. 19:44A-20.14 is to prevent bias and its appearance while bids are under consideration, a period that commences at the time the bids are received and opened.
Finally, we reject appellant's proffered construction of the term "commencement of negotiations" because appellant's interpretation does violence to the language of the applicable statute. Accepting appellant's argument, that the eighteen-month disqualification period begins the moment the contribution is made and ends eighteen months thereafter, would require us to essentially rewrite the statute. Unquestionably, the Legislature could have written the statute in the manner appellant suggests, but it chose not to do so, instead working backward from "commencement of contract negotiations" rather than, as appellant suggests, forward from the time the political contribution was issued. We are guided by the words the Legislature has chosen. Wilson, supra, 209 N.J. at 572, 39 A.3d 177. We will not rewrite the legislative enactment, or *245 disregard the policy choices the Legislature has made. DiProspero v. Penn, 183 N.J. 477, 506, 874 A.2d 1039 (2005).
We are satisfied that Treasury's December 20, 2011 final agency decision should not be disturbed because the agency correctly interpreted the statute. We have been presented with no meritorious basis upon which to alter that decision, especially where, as here, the agency decision in question implements a statutory scheme the agency is responsible for enforcing. See Utley, supra, 194 N.J. at 551, 946 A.2d 1039.

III.
Appellant also argues that the December 20, 2011 final agency decision is contrary to Executive Order 117, as implemented by Treasury's Two-Year[4] Certification Form (Certification), and must consequently be reversed. Before addressing the argument appellant presents, we pause to describe the Certification form, the completion of which is required by N.J.S.A. 19:44A-20.19. Entitled "Division of Purchase and Property, Two-Year Chapter 51/Executive Order 117 Vendor Certification and Disclosure of Political Contributions," the Certification requires the business entity to specify its full business name, business type and other routine identifying information. Thereafter, by completing Part 2, the business entity is asked to certify whether it has made any political contributions. That section, "Part 2: Public Law 2005, Chapter 51/Executive Order 117 (2008) Certification," reads as follows:
I hereby certify as follows:
1. On or after October 15, 2004, neither the below-named entity nor any individual whose contributions are attributable to the entity pursuant to Executive Order 117 (2008) has solicited or made any contribution of money, pledge of contribution, including in-kind contributions, company or organization contributions, as set forth below that would bar the award of a contract to the vendor, pursuant to the terms of Executive Order 117 (2008).
a) Within the preceding 18 months, the below-named person or organization has not made a contribution to:

. . . .
(iii) Any legislative leadership committee.

[(Emphasis added).]
The Certification requires the business entity to check a box in Part 3 if it has made no reportable contributions. If any such contributions have been made, the business entity is obliged to disclose the name and address of each recipient, the date and amount of each contribution, and whether the contribution was made in kind or by cash, check or loan.
In its April 26, 2011 certification, appellant listed thirty different political contributions, of which the $500 contribution to Assembly Republican Victory 2011 on April 7, 2010 was one.
Pointing to question 1(a) of Part 2, appellant observes that the Certification merely asks a business entity to certify that it has not made a disqualifying political contribution "[w]ithin the preceding 18 months," without referring to the statutory language "commencement of negotiations." Appellant maintains that the absence of *246 the "commencement of negotiations" language from the Certification is evidence of the invalidity of Treasury's interpretation of N.J.S.A. 19:44A-20.14. However, an agency may not repeal or contravene the provisions of a statute through the promulgation of a form. See N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385-86, 955 A.2d 886 (2008) (holding that an administrative agency may not countermand a legislative enactment). If the form were to be construed in the manner appellant suggests, and considered to be an interpretation of the term "commencement of negotiations," the form would contravene N.J.S.A. 19:44A-20.14, which a form cannot do. Ibid. Additionally, as Treasury correctly argues, the Certification form provides no different meaning for the term "the commencement of negotiations" than the interpretation Treasury adopted in its December 20, 2011 final agency decision.
Moreover, we decline to treat the Certification form as a statutory interpretation cloaked with the force of law. Chapter 51 does not explicitly confer on Treasury the authority to interpret the statutory provision at issue here. This silence is contrasted with the portions of Title 19 governing political candidates. For instance, as applied to political candidates, N.J.S.A. 19:44A-22.3h provides that "[t]he Election Law Enforcement Commission shall promulgate rules and regulations pursuant to the Administrative Procedure Act to effectuate the purpose of this section." Another portion of the statute mandates that "[t]he commission, on any form it shall prescribe for the reporting of expenditures... shall provide for the grouping together of all expenditures under the category of `campaign expenses[.]'" N.J.S.A. 19:44A-16b.
In the absence of an explicit legislative grant of authority to Treasury to render a binding interpretation of the statute by means of a certification form, we decline to treat the certification form as an interpretation of the statute that is intended to have the force of law. Rather, the question on the form regarding political contributions appears to be nothing other than Treasury's effort to gather information from bidders at the outset of the review process, as at least some of the contributions made within the eighteen months preceding submission of the bid would have occurred within eighteen months of the start of negotiations and the award of the bid. We reject appellant's contention that the certification form demonstrates the invalidity of Treasury's December 20, 2011 decision.

IV.
Appellant advances several additional arguments. Among them is its contention that, in violation of applicable procurement law standards, the final agency decision materially deviates from the RFP specifications for a Chapter 51/EO 117 Certification of Compliance. Appellant asserts that state agencies have an obligation to articulate precise specifications in an RFP, and are prohibited from engaging in any subsequent action that deviates from the specifications in the RFP. See George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 37-38, 644 A.2d 76 (1994). Appellant maintains that Treasury's insistence that the eighteen-month look back period begins on the date the bids were due is a deviation from the look back period outlined in the RFP, and that deviation is impermissible under the procurement laws.
In particular, appellant notes that the RFP specifies that "a selected firm will be required to respond ... to certification and disclosure requirements that will be stated in the Notice of Award issued by *247 the NJSDA.... Failure to submit these forms in a timely fashion shall be cause for rejection of the Firm." (emphasis added). Appellant's argument notwithstanding, the fact that a successful bidder is required by the RFP to submit the certification forms at the time of the notice of bid award has no bearing on Treasury's conclusion that the look-back period begins the day bids are due, as the timing of the submission of a form is irrelevant to the commencement of a disqualification period.
Moreover, if the look-back period corresponded with the date the "selected firm" received the notice of award, there would be no reason to require disclosure of political contributions at a later date; the agency would already have all of the information it needed on that subject. The fact that the agency requires disclosure after it has preliminarily selected firms suggests that the agency intends to scrutinize the period between the bid's submission and the time when the contract is to go into effect. The agency practice described in the RFP is consonant with both the agency's final decision in this case and the statute, in that the RFP ties disclosure requirements to the period when the agency reviews applications. Because Treasury's December 20, 2011 decision does not improperly modify the RFP, nor does it contravene the statute, the decision is valid.

V.
Finally, appellant asserts that EO 117's extension of contribution limits to legislative leadership committees is unconstitutional. In support of that contention, appellant principally relies upon our decision in Communications Workers of America v. Christie, 413 N.J.Super. 229, 274, 994 A.2d 545 (App.Div.2010) (CWA), in which we invalidated Executive Order 7(EO7) on separation of powers grounds. Appellant's reliance on that decision is unavailing, as our decision in CWA implicated issues not present here, namely, that by subjecting labor unions and labor organizations to pay-to-play restrictions on political campaign contributions, EO 7 contravened statutes concerning labor unions. Id. at 269, 271, 994 A.2d 545. EO 117 does not encroach upon unrelated legislative enactments, which was the case in CWA. We reject appellant's argument that EO 117 is unconstitutional.
To the extent we have not addressed any additional arguments appellant may have presented, those arguments lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] "Chapter 51" refers to the Campaign Contributions and Expenditure Reporting Act, N.J.S.A. 19:44A-1 to -26.
[2] The Chapter 51 Unit is responsible for enforcing the statutory provisions concerning public contracts and political contributions.
[3] The relevant language of Executive Order 117, ¶ 3, directs agencies to apply Chapter 51 to a contribution to a legislative leadership committee in the same manner as a contribution to a political committee or election fund identified in Chapter 51. EO 117 provides no guidance on the definition of the term "the commencement of negotiations."
[4] The certification is entitled a "Two-Year Vendor Certification" because the Certification is deemed to be in effect for two years, provided that the ownership status of the business entity does not change and that no additional political contributions are made during the two-year period.