**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3898-22

DONNA S. PLATT,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued October 10, 2024 – Decided November 25, 2024

Before Judges Mawla and Natali.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx1821.

Stuart A. Platt argued the cause for appellant.

Payal Y. Ved, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Payal Y. Ved, on the brief).

PER CURIAM

Petitioner Donna Platt appeals from a July 21, 2023 final administrative determination of respondent, Board of Trustees of the Public Employees' Retirement System (Board), denying her request for an intra-fund transfer of retirement credits from the Public Employees' Retirement System (PERS) to Winslow Township (Winslow) for services she provided while a municipal prosecutor in the Township of Berlin (Berlin). Both an Administrative Law Judge (ALJ) and the Board concluded that petitioner, as an independent contractor, performed professional services and thus was not eligible for such a transfer under N.J.S.A. 43:15A-7.2(b). We are satisfied the Board's decision was not arbitrary, capricious, or unreasonable and therefore affirm.

I.

Platt first enrolled in PERS in January 1993. From 2003 to 2007, she was enrolled in PERS for her concurrent municipal prosecutor positions in Winslow,[1] the Borough of Hi–Nella (Hi–Nella), the Borough of Chesilhurst

---

[1] Beginning in 2003, Platt has served as the municipal prosecutor for Winslow every year except for 2008.

A-3898-22

(Chesilhurst), the Borough of Berlin, and Berlin.[2]  She also maintains a private law practice.

In March 2010, following the adoption of N.J.S.A. 43:15A-7.2, the Division of Pensions and Benefits (Division) commenced an investigation concerning Platt's continued eligibility in PERS.  By letter dated May 16, 2012, the Division informed Platt it had concluded she was an employee of Berlin and, based on that employment, remained eligible to participate in PERS.  The Division, however, also concluded Platt was engaged under professional services contracts in the remaining four municipalities, rendering her ineligible for PERS participation and service credit from those positions.  In 2015, the Board rendered its final determination and affirmed the Division's conclusions.

Platt appealed, and in an unpublished opinion, we affirmed the Board's decision.  See Platt v. Bd. of Trs., Pub. Emps.' Ret. Sys., Docket No. A-0516-15 (App. Div. June 19, 2017) (slip op. at 2).  We concluded that, with the exception of her service in Berlin, Platt's work as a municipal prosecutor in Winslow, Hi-Nella, Chesilhurst, and the Borough of Berlin was performed under professional services agreements or relationships, and hence ineligible for pension credits, effective January 1, 2008.  See id. at 19-22.  Regarding Platt's service in

---

[2]  Platt has served as the municipal prosecutor for Berlin since 2008.

A-3898-22

Winslow, we noted "we do not agree the title to an earlier contract, labeled 'Employment Agreement' is controlling; nor is payment of the annual contract salary through payroll dispositive. We look past the form employed and examine the substance of the arrangement." Id. at 19-20.

While Platt's prior appeal was pending, Winslow passed an ordinance designating the municipal prosecutor position as an employee position. Prior to the passage of that ordinance, between 2009 to 2014, Winslow hired Platt each year through a Request for Proposal (RFP) process under the Local Public Contracts Law (LCPL), N.J.S.A. 40A:11-1 to -60. Effective January 1, 2015, Winslow indicated that it hired Platt as an employee rather than through the LPCL process, and on January 6, 2015, Winslow's Municipal Clerk informed the Attorney General's Office that Platt had been hired as an employee.

Although Platt's relationship with Winslow and her job duties largely remained the same, based on this change, Platt applied to the Division for an intra-fund transfer of her PERS enrollment credits from Berlin to Winslow.[3] As a result of this request, the Division's Pension Fraud and Abuse Unit (PFAU) commenced an investigation into whether she was properly classified as an employee of Winslow.

---

[3] Intra-fund transfers are governed by N.J.A.C. 17:1-3.5 and N.J.A.C. 17:2-7.2.

By letter dated January 25, 2017, the Board informed Platt it denied her request for an intra-fund transfer of her PERS enrollment credits. It concluded to permit Platt "to 'convert' her independent contractor status would violate the very purpose of Chapter 92[,]" but in doing so, it appears the Board based its decision upon N.J.S.A. 43:15A-7.2(a). Platt appealed and the matter was transferred to the Office of Administrative Law (OAL) for a hearing as a contested case. On November 26, 2018, however, the Board returned the matter back to the Division for further review under the correct statutory provision, N.J.S.A. 43:15A-7.2(b).

PFAU assigned investigator Kristen Conover to conduct this review and perform an appropriate investigation. With that charge, she examined Platt's employee status with Winslow and produced a report dated July 3, 2019. Conover's investigation included: (1) fact-finding interviews with Nancy Esposito–Winslow's Certifying Officer, Stephen Dringus–Winslow's Supervising Certifying Officer, and Joseph Gallagher–Winslow's Administrator; (2) a review of the twenty-factor questionnaire completed by Esposito; and (3) an Employee/Independent Contractor Checklist also

5

completed by Esposito.[4]   While Conover's investigation did not include an interview with Platt, Conover explained it is standard practice to only interview the designated certifying officer and the designated supervising certifying officer.  Conover did, however, twice offer Platt the opportunity to answer the twenty-factor questionnaire, which she declined.

Esposito indicated in the twenty-factor questionnaire and checklist that Winslow considered Platt an employee, but Conover disagreed.[5]   Instead, after applying the twenty-factor analysis from IRS Revenue Ruling 87-41 (twenty-factor test), Conover concluded Platt served Winslow as an independent contractor, not an employee.

The twenty-factor balancing test examines the following aspects of the work to determine whether the worker should be classified as an employee or independent contractor based on the totality of the circumstances:   (1) Instructions, interpreted as the amount of control exerted over the worker; (2) Training, interpreted as whether the employer has provided training to the

---

[4]  The checklist is a fact-finding document PFAU uses to gather information with respect to an individual's employment status.

[5]  The submitted twenty-factor test and checklist was signed by Esposito on behalf of Winslow, however, Esposito, Gallagher, and Dringus all contributed to filling out the two documents.

worker; (3) Integration, interpreted as whether the worker's services are integral to the overall business operation; (4) Services Rendered Personally, interpreted as whether the workers services must be rendered personally; (5) Hiring, Supervising, and Paying Assistants, interpreted as whether the worker is authorized to hire, supervise, and pay others to assist them in performing their job duties; (6) Continuing Relationship; (7) Set Hours of Work; (8) Full Time Required; (9) Doing Work on Employer's Premise; (10) Order or Sequence Set, interpreted as whether the worker must perform services in the order or sequence set by the employer; (11) Oral or Written Reports, interpreted as whether the worker submits regular oral or written reports to the employer; (12) Payment By Hour, Week, or Month; (13) Payment of Business and/or Traveling Expenses; (14) Furnishing of Tools and Materials; (15) Significant Investment, interpreted as whether the worker invests in facilities they use to perform their services; (16) Realization of Profit or Loss; (17) Working for More than One Firm at a Time; (18) Making Services Available to the General Public; (19) Right to Discharge; and (20) Right to Terminate. See Rev. Rul. 87-41, 1987-1 C.B. 296., 11-18.

Conover concluded Platt met the definition of independent contractor with regard to the following factors: one; two; three; four; five; six; seven; eight;

A-3898-22

nine; ten; eleven; twelve; thirteen; fourteen; seventeen; and eighteen.[6] She acknowledged, however, that factors fifteen, sixteen, nineteen, and twenty supported Platt's designation as an employee.

The Board issued a written decision on October 19, 2020, adopting Conover's determination that Platt met the definition of an independent contractor and was ineligible to transfer her PERS membership from Berlin to Winslow under N.J.S.A. 43:15A-7.2(b). Platt appealed on November 18, 2020, and the matter was again transferred to the OAL as a contested case before an ALJ. The ALJ held a hearing on February 16, 2023, where Conover and Dringus testified on behalf of the Board, and Platt testified on her own behalf.

On June 13, 2023, the ALJ issued an initial decision in which she concluded "Platt [was] ineligible for PERS membership under N.J.S.A. 43:15A-7.2(b)." Analyzing the pertinent factors from the twenty-factor test, the ALJ ultimately concluded Platt served Winslow as an independent contractor.

First, addressing the control factor, the ALJ acknowledged Winslow controls "Platt's hours insofar as they are tied to the court calendar[,]" and she "reports to the Court Administrator" for work. The ALJ, however, differentiated

---

[6] Conover recognized, however, given the unique circumstances of a municipal prosecutor, the following factors were not necessarily strong indicators: three; five; seven; ten; twelve; and thirteen.

this degree of control "from 'punching' a time clock, signing in, or otherwise alerting a supervisor that you have timely arrived at your workstation, which [she] believe[d] is the intent of this inquiry." Rather, she highlighted the following facts that showed Winslow did not control Platt's work: (1) Winslow did not maintain timekeeping records for Platt; (2) Esposito's inconsistent answers in the checklist and questionnaire as to whether Platt submits regular reports to Winslow; and (3) Winslow's lack of knowledge concerning Platt's duties.

The ALJ also noted "Platt's required attendance on one Wednesday per week does not meet the definition of full time." Additionally, while other Winslow employees are required to undergo training in diversity, harassment, and ethics in the workplace, Platt only attended bi-annual building security training for the court and training with the Camden County Prosecutor's Office and the Attorney General's Office specific to her role as municipal prosecutor. The ALJ also addressed the fact that Platt was not subjected to performance evaluations and noted "[h]er yearly statutory appointment is not the type of performance evaluation intended by this factor."

Regarding the furnishing of tools and materials factor, while Winslow provided Platt with a designated conference room, equipped with a desk, phone,

A-3898-22

and copier, the ALJ noted Winslow did not provide Platt with any other equipment nor did it reimburse her for any expenses aside from "a computer application for State Police discovery." Further, despite Platt's twenty-year relationship with Winslow, the ALJ emphasized the fact that municipal prosecutors by statute must be reappointed annually and this type of yearly appointment "is inconsistent with an ongoing employment relationship."

Despite Winslow's designation of Platt as an employee, the ALJ noted that prior to 2015 Platt had served Winslow "under the RFP process pursuant to a professional services agreement." And, "[b]y [Platt's] own admission, the nature of her services did not change between the years before 2015 and the years after 2015." Additionally, despite Platt's status as a W-2 employee, the ALJ gave this fact less weight because, as she explained, financial control is a factor that can be "easily manipulated by the parties . . . ."

The ALJ ultimately summarized her conclusion that Winslow employed Platt as an independent contractor as follows:

> In 2015, Winslow changed its ordinance, to include the position of municipal prosecutor as an employee. Only Platt [was] included. The other prosecutor [was] employed under a professional services contract subject to the RFP process. Platt was also the municipal prosecutor prior to 2015 and there were no changes to her duties because of the ordinance change. Platt must obviously be present when court is

in session, but no one in Winslow otherwise control[led] her comings and goings. She was not trained by Winslow personnel. No one formally evaluate[d] her or [told] her how to execute her job substantively. Platt provide[d] the same services to other municipalities. These factors, in [the ALJ's] mind, establish[ed] that Winslow [did] not exert control over how Platt perform[ed] her professional responsibilities. Platt serve[d] as municipal prosecutor for several municipalities and offer[ed] her legal services to the public through her private law firm.

In a July 21, 2023 final agency determination, the Board adopted the ALJ's findings and informed Platt it was denying her request "to transfer her PERS membership from" Berlin to Winslow. This appeal followed.

## II.

Before us, Platt argues the Board's "determination was based upon fact finding that was arbitrary and capricious and not based upon substantial credible evidence in the record." She maintains Conover's investigation, which the ALJ and the Board relied upon, "was fundamentally flawed." Platt further contends the ALJ misapplied the twenty-factor test in analyzing her duties as a municipal prosecutor and argues "if the [L]egislature wanted to preclude municipal prosecutors from enrollment in PERS they could have said so. Chapter 92 does not specifically exclude municipal prosecutors from enrollment in PERS or from intra-agency PERS transfers."

Regarding the ALJ's findings, Platt argues she based those conclusions "on extremely minor and insignificant points instead of the totality of all the evidence of all the factors . . . ." For example, Platt maintains the ALJ erroneously concluded Winslow does not control, direct, or supervise Platt's work and "[t]he emphasis on control should be on [Platt's] ability to independently direct her own work efforts versus the level of qualitative detail [,] which any employee much less a municipal prosecutor would know over a Township representative that is not within the municipal court system."

Our review of decisions by administrative agencies is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result . . . .'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). In our review, we only determine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency

follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Id. at 482-83 (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

Further, "'[a]n administrative agency's interpretation of a statute it is charged with enforcing is entitled to great weight.'" In re Eligibility of Certain Assistant Union Cnty. Prosecutors to Transfer to PFRS under N.J.S.A. 43:16A-1 et seq., 301 N.J. Super. 551, 561 (App. Div. 1997) (quoting In re Saddle River, 71 N.J. 14, 24 (1976)); accord In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 415, 431 (2004). "'[W]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible.'" St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005) (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004)). Our courts have extended this level of deference to state agencies that administer pension statutes. See, e.g., Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196, (2007).

"This deference comes from the understanding that a state agency brings experience and specialized knowledge to its task of administering and regulating

a legislative enactment within its field of expertise." In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010) (citing Kasper v. Bd. of Trs. of the Teachers' Pension & Annuity Fund, 164 N.J. 564, 580-81 (2000)). However, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue . . . .'" Utley v. Bd. of Rev., 194 N.J. 534, 551 (2008) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). Our review of a "strictly legal issue" is de novo. In re Langan Eng'g. & Env't Servs., Inc., 425 N.J. Super. 577, 581 (App. Div. 2012) (citing Utley, 194 N.J. at 551).

The Legislature adopted a publicly funded pension system for State and qualifying municipal employees in order to provide "deferred compensation for services rendered." Uricoli v. Bd. of Trs., Police & Firemen's Ret. Sys., 91 N.J. 62, 71 (1982). Through this system, the Legislature hoped to "encourag[e] qualified individuals to enter and remain in public service." Ibid. (quoting Masse v. Bd. of Trs., Pub. Emps. Ret. Sys., 87 N.J. 252, 261 (1981)).

In response to decreases in State revenue and other policy considerations, the Legislature drastically reformed the public pension system through its enactment of Public Law 2007, L. 2007, c. 92 (Chapter 92). Codified at N.J.S.A. 43:15C-1 to -15, Chapter 92 created the Defined Contributions Retirement

Program (DCRP), as an alternative to PERS, which became effective on July 1, 2007.

The Chapter 92 reforms also included the enactment of related statutes directed to modifying PERS. As relevant here, N.J.S.A. 43:15A-7.2 changed eligibility rules for pension participation by individuals serving in certain government positions pursuant to professional service contracts or as independent contractors. Generally, eligibility for PERS enrollment is governed by N.J.S.A. 43:15A-7(b), which provides:

> Any person becoming an employee of the State or other employer after January 2, 1955 . . . and other than those whose appointments are seasonal, becoming an employee of the State or other employer after such date, including a temporary employee with at least one year's continuous service. The membership of the retirement system shall not include those persons appointed to serve as described in paragraphs (2) and (3) of subsection a. of [N.J.S.A. 43:15C-2], except a person who was a member of the retirement system prior to the effective date [July 1, 2007] of sections 1 through 19 of [Chapter 92] ([N.J.S.A.] 43:15C-1 through [N.J.S.A.] 43:15C-15, [N.J.S.A.] 43:3C-9, [N.J.S.A.] 43:15A-7, [N.J.S.A.] 43:15A-75 and [N.J.S.A.] 43:15A-135) and continuously thereafter.
>
> [(Second alteration in original).]

Addressing PERS eligibility for providers of professional services, such as independent contractors, N.J.S.A. 43:15A-7.2 dictates:

a.  A person who performs professional services for a political subdivision of this State . . . under a professional services contract awarded in accordance with [N.J.S.A. 40A:11-5], N.J.S.[A.] 18A:18A-5 or [N.J.S.A. 18A:64A-25.5], on the basis of performance of the contract, shall not be eligible for membership in the Public Employees' Retirement System.  A person who is a member of the retirement system as of the effective date of [Chapter 92] shall not accrue service credit on the basis of that performance following the expiration of an agreement or contract in effect on the effective date. . . .   No renewal, extension, modification, or other agreement or action to continue any professional services contract in effect on the effective date of [Chapter 92] beyond its current term shall have the effect of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the contract.

b.  A person who performs professional services for a political subdivision of this State . . . shall not be eligible, on the basis of performance of those professional services, for membership in the Public Employees' Retirement System, if the person meets the definition of independent contractor as set forth in regulation or policy of the federal Internal Revenue Service for the purposes of the Internal Revenue Code. Such a person who is a member of the retirement system on the effective date of [Chapter 92] shall not accrue service credit on the basis of that performance following the expiration of an agreement or contract in effect on the effective date.

Nothing contained in this subsection shall be construed as affecting the provisions of any agreement or contract of employment in effect on the effective date of [Chapter 92], whether or not the agreement or contract

16

specifically provides by its terms for membership in the retirement system. No renewal, extension, modification, or other agreement or action to continue any such agreement or contract in effect on the effective date of [Chapter 92] beyond its current term shall have the effect of continuing the membership of a person in the retirement system or continuing the accrual of service credit on the basis of performance of the agreement or contract.

As used in this subsection, the term "professional services" shall have the meaning set forth in [N.J.S.A. 40A:11-2].

[(Emphasis added).]

In order to determine whether an individual who provides professional services is employed as an employee or as an independent contractor, and thus ineligible for PERS participation under N.J.S.A. 43:15A-7.2(b), our court has endorsed the application of the twenty-factor test. See Rev. Rul. 87-41 at 11-18; see also Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 350-51 (App. Div. 2010); Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 393 N.J. Super. 524, 542 (App. Div. 2007), rev'd on other grounds, 198 N.J. 215 (2009); Stevens v. Bd. of Trs. of the Pub. Emps.' Ret. Sys., 294 N.J. Super. 643, 653 n.1 (App. Div. 1996). "The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed." Rev. Rul. 87-41 at 10-11.

Having considered Platt's arguments in the context of our deferential standard of review and the applicable law, we are satisfied the ALJ's factual findings are supported by the record and warrant our deference. We further concur the ALJ's legal conclusions, also adopted by the Board, supported the determination that Platt met the definition of an independent contractor under the twenty-factor IRS test expressly adopted by N.J.S.A. 43:15A-7.2(b), and she was not an employee of Winslow. She was therefore not entitled to the requested intra-fund transfer of her accumulated PERS credits from Berlin.

First, we reject Platt's criticism of the investigator's findings because Conover failed to obtain information from her directly. The record reveals that Platt, despite two separate requests from Conover, failed to complete the questionnaire. Under the circumstances, Conover properly considered the responses that were provided. Further, the ALJ fully considered Platt's detailed testimony under the twenty-factor test and fairly concluded she was an independent contractor for Winslow. Those factual findings are fully supported by the record and the ALJ's legal conclusions based upon them are unassailable.

Specifically, after considering the evidence against the twenty-factor test, the ALJ concluded a balancing of the pertinent factors supported the conclusion

18

Platt's job duties and responsibilities as municipal prosecutor were more akin to an independent contractor. As to the control factors, other than requiring her attendance in court on certain days and requiring her to prosecute assigned cases, obligations of all municipal prosecutors, the record supports the ALJ's conclusion that Winslow did not direct or control Platt's actions or decision-making. While Platt contends she "testified credibly and extensively about the overwhelming amount of control exerted by the Winslow Municipal Court Judge," the ALJ reasonably accorded little weight to this claim, as Platt performed similar tasks in other municipalities, supervised by different judges.

Additionally, despite her claim that she was involved in other aspects of the municipal court, including interacting with staff and police, the ALJ's findings, supported by Conover's investigation, established Platt failed to establish the manner or circumstances under which Winslow controlled her work when court was not in session. These findings by the ALJ reasonably support the conclusion that factors one and three indicated Winslow employed Platt as an independent contractor.

With respect to the training factor, the record again supports the ALJ's finding that Platt did not receive training similar to other Winslow employees. For example, Conover's investigation revealed Winslow employees are required

to undergo training in diversity, harassment, and ethics in the workplace. While Platt testified she received bi-annual municipal building security training and training from the Camden County Prosecutor's office and the Attorney General's office, those trainings were unique to her position as Winslow's municipal prosecutor. The ALJ, therefore, reasonably distinguished those trainings from the type of human resources training other Winslow employees receive.

With respect to factors seven and eight, the ALJ also reasonably concluded those factors indicated Winslow employed Platt as an independent contractor. The ALJ found that although Platt was required to appear in court under a set schedule, "no one in Winslow otherwise control[led] her comings and goings." For example, the ALJ found she was often contacted outside of court and Platt testified after the COVID-19 pandemic she spent approximately one to two hours a week addressing her required duties. It should be noted, even after the pandemic, Platt performed certain required tasks, such as monitoring the Municipal Case Resolution database, from her private law offices, which were not controlled by Winslow. Further, the ALJ found "Winslow maintain[ed] no timekeeping records for Platt."

Under factor eight, the ALJ also fairly determined Platt's appearance in court one day a week, in addition to her other duties, did not qualify her as an

20

employee. That finding was further supported by other evidence in the record; specifically, that Platt maintained a private law practice and served as a prosecutor in other municipalities.

Considering factor eleven, the ALJ reasonably rejected Platt's argument that her oral reports to various Winslow employees was indicative of an employee status. The ALJ found those reports were specific to pending cases or were meant to provide Winslow employees with updates to the law. Platt was not reporting on her work performance and nothing about that reporting was suggestive of Winslow's control over how she performed her required obligations. In addition, while the ALJ considered the fact that Platt had been reappointed each year, she appropriately concluded those yearly appointments were "not the type of performance evaluation intended by this factor."

As to factor twelve, the ALJ determined this factor should be afforded "the least amount of weight." Specifically, although Platt was paid a salary and issued W-2s, consistent with IRS guidance, the ALJ noted financial arrangements could be "easily manipulated" by employers. See Rev. Rul. 87-41 at 15 ("Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job."). As

21

the ALJ recognized, "[b]y [Platt's] own admission, the nature of her services did not change between the years before 2015 and the years after 2015." The ALJ's findings were consistent with both the IRS guidelines and our prior decision in which we noted Winslow's characterization and tax treatment of Platt was not dispositive. See Platt, slip op. at 20 (characterizing an individual as an employee "will not save an ineligible individual from the preclusive effect of [Chapter 92]"); see also Rev. Rul. 87-41 at 11 ("[S]pecial scrutiny is required in applying the twenty factors to assure that formalistic aspects of an arrangement designed to achieve a particular status do not obscure the substance of the arrangement . . . .").

The ALJ properly considered the record and determined factors thirteen, seventeen, and eighteen did not support Platt's claims of employee status. First, despite Platt's contention she was reimbursed for expenses related to an application for State Police discovery, the ALJ found that she did not provide sufficient proof she was reimbursed for those expenses and the ALJ also noted she was provided with "[o]nly incidental office supplies . . . ." In addition, as it relates to factors seventeen and eighteen, again, it was uncontested Platt served as a municipal prosecutor in other municipalities and represented clients in her private practice.

Platt's arguments to the contrary, which we reject, quarrel with the findings of the investigator and the ALJ's supported factual findings. As noted, Conover based her findings on responses to the questionnaire, checklist, and interviews provided by individuals designated by Winslow. Those responses revealed a number of inconsistences[7] and a lack of knowledge regarding Platt's duties; reflecting a lack of institutional control, and therefore supported the ALJ's independent contractor finding under N.J.S.A. 43:15A-7.2(b).

We are also unconvinced by Platt's apparent argument that the Board's decision ostensibly prevents any municipal prosecutor from being deemed an employee. First, the analysis and application of the twenty-factor test is highly fact-sensitive and "varies depending on the . . . factual context in which the services are performed." Rev. Rul. 87-41 at 10-11. Second, we are unpersuaded municipal prosecutors are precluded from being declared employees under the twenty-factor test. There is no precedent to support us drawing such a conclusion. Finally, Platt's argument is belied by the Board's determination that

---

[7] For example, the ALJ found that Winslow's "certifying officer on the Questionnaire answered 'not applicable' to the question of whether Platt submitted regular written or oral reports to the entity. Yet, on the Checklist responded 'yes' to the requirement to prepare regular reports."

 A-3898-22

she was eligible to participate in PERS based on her employment with Berlin, as we addressed in our prior opinion. <u>Platt</u>, slip op. at 18.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3898-22